IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RACHEL HENRICHS, REID HENRICHS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>BRENDAN KELLY, in his Official Capacity as Director of the Illinois State Police, and KWAME RAOUL, in his Official Capacity as Attorney General of Illinois,<br><br>Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COME NOW Rachel Henrichs, Reid Henrichs, Gun Owners of America, Inc., and Gun Owners Foundation, ("Plaintiffs"), by and through undersigned counsel, and allege as follows:

1. This case involves a challenge to the State of Illinois' refusal to allow the vast majority of Americans to exercise their enumerated constitutional right to "keep and bear arms."

2. Illinois law prohibits both the open and concealed public carry of firearms as a general matter, allowing only concealed carry upon licensure under the Firearm Concealed Carry Act. *See* 720 Ill. Comp. Stat. Ann. 5/24-1(a)(4) (generally prohibiting concealed and vehicular carry, but exempting licensees); 720 Ill. Comp. Stat. Ann. 5/24-1.6(a)(1) (extending the general prohibition to open carry, but without exempting licensees); 430 Ill. Comp. Stat. Ann. 66/10(c)("permit[ting] the licensee" to carry "fully concealed or partially concealed" and "concealed … within a vehicle").

1

3. Further, the State of Illinois does not recognize any other state's license to carry. Accordingly, Illinois nonresidents must obtain an Illinois license to legally carry a firearm in public while visiting the State.

4. However, in order for an Illinois nonresident to obtain a license to carry a concealed firearm in Illinois, 430 Ill. Comp. Stat. Ann. 66/40 states, in part, that "[t]he Illinois State Police shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are *substantially similar* to the requirements to obtain a license under this Act." *Id.* (emphasis added); *see also* Ill. Admin. Code tit. 20, § 1231.110.

5. However, the laws of only six other states have been found to be "substantially similar" to Illinois' – namely, Arkansas, Idaho, Mississippi, Nevada, Texas, and Virginia.[1]

6. Section 66/40 and the Illinois State Police implementation thereof violate the Second Amendment. The U.S. Supreme Court has explained that the Second Amendment right is exercised individually and belongs to all Americans, and **guarantees** a right to bear arms in public for self-defense.

7. In direct contravention of those clear holdings, Defendants provide no avenue for "all Americans," who are not residents of Illinois or who do not live in the six "substantially similar" states, to keep or bear arms.

8. And, because Illinois (i) generally bans the bearing of arms without a license to carry a concealed handgun, (ii) does not grant reciprocity to any other state's license to carry, and

---

[1] *See* https://www.ispfsb.com/Public/SubstantiallySimilarSurvey.pdf.

(iii) prohibits the open carrying of a firearm,[2] there is no way for Illinois nonresidents to "bear arms" in public.

9. Thus, for the vast majority (approximately 81 percent) of Americans who are not residents of Illinois and who do not reside in one of the six "substantially similar" states, the Second Amendment right to bear arms simply does not exist. No other provision of the Bill of Rights works this way.

10. Illinois' patently unconstitutional scheme represents an extreme outlier among the 50 states, as Plaintiffs are not aware of *any state* except Hawaii that similarly has *no mechanism* for the majority of Americans to bear arms – by denying nonresidents the ability to apply for licenses to carry a concealed handgun, and by refusing to recognize or grant reciprocity to the out-of-state licenses held by nonresidents.

11. Other courts recently have struck down similar firearm regimes. Rejecting California's refusal to issue nonresident licenses, a district court in California held that a law that barred nonresidents from applying for a license to carry a concealed handgun violated the Constitution. A New York district court did the same. Finally, a Massachusetts state court held that a person should not become a felon while traveling through a state simply because that person did not obtain that state's license to carry a concealed handgun.

12. This Court similarly should reach the same conclusion here – that Illinois' complete ban on public carry for the majority of Americans violates the Second and Fourteenth Amendments.

### I. PARTIES

---

[2] *See* 720 Ill. Comp. Stat. Ann. 5/24-1(a)(10).

13.     Plaintiff Rachel Henrichs is a natural person and a citizen of the United States and of the State of Tennessee.  Mrs. Henrichs resides in Claiborne County, Tennessee.  *See* Exhibit A, Declaration of Rachel Henrichs.

14.     Mrs. Henrichs is a law-abiding person, a gun owner, a member of Plaintiff Gun Owners of America, Inc. ("GOA"), and she currently possesses a valid Tennessee Lifetime Enhanced Handgun Carry Permit.  She is able to lawfully bear arms in public in Tennessee and across most of the country, either through other states' grants of reciprocity to her Tennessee permit or through the exercise of "constitutional carry" permitted by most states.

15.     Mrs. Henrichs served in the United States Marine Corps ("USMC") from 2004-2009, and received an honorable discharge.  As an Officer in the USMC, she received firearm training involving both pistols and rifles, and she was deployed to Iraq with these firearms.  After discharge, Mrs. Henrichs became a full-time operating room nurse.  During this time, she also served in the Marine Corps Reserves and the United States Navy Nurse Corps.  Since 2020, Mrs. Henrichs has received over 100 hours of firearms training and is a Certified NRA Pistol Instructor.  Mrs. Henrichs also assists others with the training of students at a training academy.

16.     Plaintiff Reid Henrichs is a natural person and a citizen of the United States and of the State of Tennessee.  Mr. Henrichs resides in Claiborne County, Tennessee.  *See* Exhibit B, Declaration of Reid Henrichs.

17.     Like his wife and co-Plaintiff, Rachel Henrichs, Mr. Henrichs is a law-abiding person, a gun owner, a member of Plaintiff GOA, and he currently possesses a Tennessee Lifetime Enhanced Handgun Carry Permit, and permits to carry from Louisiana and New Jersey.  He is able to lawfully bear arms in public in Tennessee and across most of the country, either through other

states' grants of reciprocity to his Tennessee permit or through the exercise of "constitutional carry" permitted by most states.

18.     Mr. Henrichs also served in the USMC from 1999-2003 and received an honorable discharge. While serving, he became a Designated Marksman instructor. After discharge, Mr. Henrichs attended the Police Training Institute at the University of Illinois. Thereafter, he was a police officer from 2004-2006, during which time he was deployed with Task Force Illinois in response to Hurricanes Katrina and Rita. Mr. Henrichs is an NRA Certified Instructor, a Tennessee State Certified Handgun Safety Instructor,[3] and a certified handgun instructor with the Maryland State Police, the Illinois State Police, a "duly authorized" handgun instructor in New York State, certified to teach Connecticut handgun permit applicants, certified to teach handgun permit applicants in Rhode Island, and authorized to certify handgun applicants in New Jersey. He has been a full-time firearms instructor since 2013. Additionally, he holds a number of instructor ratings from firearms schools across the nation. Mr. Henrichs has owned and operated a firearms training facility called Valor Ridge (www.valorridge.com) since 2015. Mr. Henrichs has trained thousands of students from across the United States, including military, law enforcement, and responsible armed citizens.

19.     If allowed to apply for Illinois licenses to carry a concealed handgun, Mr. and Mrs. Henrichs would do so immediately. However, they are prohibited even from applying because they are not residents of Illinois and do not reside in one of the "substantially similar" states

---

[3] *See* Tenn. Comp. R. & Regs. 1340-02-03-.06. This certification allows Mr. Henrichs to provide instruction so that persons can obtain a Tennessee Enhanced Handgun Carry Permit, thereby allowing those individuals to carry in a variety of additional areas in Tennessee, including, *inter alia*, "while within or on a public park, natural area, historic park, nature trail, campground, forest, greenway, waterway, or other similar public place that is owned or operated by the state, a county, a municipality, or instrumentality of the state, a county, or municipality[.]" *See* Tenn. Code Ann. § 39-17-1311(b)(1)(H)(i).

recognized by the Illinois State Police. Were Mr. and Mrs. Henrichs permitted to apply for an Illinois license to carry a concealed handgun, both would meet the eligibility standards required for such a license to carry a concealed handgun, aside from their nonresidency in Illinois. But for the Illinois prohibition on their applying by virtue of their out-of-state residency, both Mr. and Mrs. Henrichs are otherwise eligible to possess and carry firearms in Illinois.

20. Alternatively, if allowed to use their Tennessee permits to possess and carry firearms within Illinois, Mr. and Mrs. Henrichs would do so, but cannot due to operation of Illinois law, which does not recognize the validity of or grant reciprocity to any other state's permit.

21. Mr. and Mrs. Henrichs are the type of persons discussed by the Supreme Court in its recent opinion in *N.Y. State Rifle & Pistol Ass'n v. Bruen* – that is, they are the typical, law-abiding American citizens with ordinary self-defense needs, who cannot be dispossessed of their right to bear arms in public for self-defense in Illinois simply due to their status as Tennessee residents.

22. A plaintiff need not submit to a government policy to establish standing to challenge that policy when formal application would be a futile gesture.

23. But even though she is not required to attempt to apply for a license to carry a concealed handgun and be refused before filing suit against the challenged statute, Mrs. Henrichs nevertheless did attempt to apply for an Illinois license to carry a concealed handgun on the Illinois State Police website. However, the website would not allow Mrs. Henrichs to apply once she selected that she resides in Tennessee.

24. Additionally, after Mrs. Henrichs attempted, but was not allowed to apply for a license to carry a concealed handgun, she emailed ISP.AskFOIDandCCL@Illinois.gov and requested assistance in applying as a Tennessee resident.

25.     The Illinois State Police then sent Mrs. Henrichs a response, stating that "Residents of Tennessee are not eligible for a non-resident IL CCL.  For more information, please visit the www.ispfsb.com FAQ section.  Thank you, ISP J746."  *See* Exhibit A.

26.     Both Mr. and Mrs. Henrichs are ready and able to apply for a license to carry a concealed handgun in Illinois, meeting all the requirements of Illinois law, except for residency in Illinois or in one of the "substantially similar" states identified by the State Police.  Mr. and Mrs. Henrichs would apply immediately if the residency requirement was struck down.

27.     Due to operation of Illinois law and Illinois' refusal to allow American citizens from most other states to even apply for an Illinois license, there is no avenue for Mr. and Mrs. Henrichs to apply for and to receive a license to carry a concealed handgun in the State of Illinois.

28.     Mr. and Mrs. Henrichs routinely visit their friends in Marion, Illinois.  In the next 60 days and regularly thereafter, Mr. and Mrs. Henrichs intend to visit Marion, Illinois to visit those friends and, but for the challenged statute, Mr. and Mrs. Henrichs would carry their handguns concealed during their stay in Marion.  However, because they are prohibited from carrying their handguns concealed, as they cannot even apply for an Illinois concealed carry license, Mr. and Mrs. Henrichs will be required to choose between leaving their handguns locked in their vehicle while they visit friends in Illinois, or violating state law.  *See* 430 Ill. Comp. Stat. Ann. 66/40(e).  A violation of Illinois' "Unlawful Possession of Weapons," 720 Ill. Comp. Stat. Ann. 5/24-1, is a Class A misdemeanor, with a "sentence of imprisonment … of less than one year" and a fine between $75 to $2,500.  *See* 730 Ill. Comp. Stat. Ann. 5/5-4.5-55.  Both Mr. and Mrs. Henrichs are ready to otherwise comply with all other Illinois laws regarding possession and carry while in Illinois.

29. Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including thousands within Illinois and many in this District. Many of GOA's members, like Mr. and Mrs. Henrichs, are law-abiding citizens of the United States but are not residents of Illinois or "substantially similar" states, and therefore cannot apply for and receive a license to carry a handgun in Illinois. Consequently, GOA members and supporters like Mr. and Mrs. Henrichs have been, are being, and will continue to be irreparably harmed by Illinois' blatantly unconstitutional contravention of their Second and Fourteenth Amendment rights. *See* Exhibit C, Declaration of Erich M. Pratt.

30. GOA's Senior Vice President, Mr. Pratt, further identifies six GOA members who do not reside within Illinois and who do not reside in one of the six "substantially similar" states. For instance, Carl Higbie, a GOA member and resident of Connecticut, travels to Illinois and wishes to obtain an Illinois license to carry but cannot even apply for one. *See* Exhibit C at ¶ 10. Richard Hughes, a GOA member and resident of Florida, also wishes to obtain an Illinois license to carry, but cannot apply. *Id*. at ¶ 11. Sheryl Decasse, a GOA member and resident of New Jersey, likewise wishes to obtain a license to carry in Illinois, but cannot apply. *Id*. at ¶ 12. Micah Young, a GOA member and resident of Michigan, also wishes to obtain a license to carry in Illinois but is prohibited from applying. *Id*. at ¶ 13. And Andrew Roberts, a GOA member and resident of Hawaii, is prohibited from applying for an Illinois license to carry because he does not live in Illinois or in one of the other "substantially similar" states. *Id*. at ¶ 14. Finally, Val Finnell, a

GOA member who resides in Pennsylvania, occasionally travels to Illinois and also wishes to apply for an Illinois license to carry, but is prohibited from applying because he does not live in Illinois and Pennsylvania is not a "substantially similar" state. *Id*. at ¶15.

31. Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. For example, two of GOF's Board Members also are supporters of GOF. Although not a "traditional" membership organization, courts have found GOF to possess "indicia of membership" under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), for purposes of representing its supporters' interests in litigation. *See, e.g.*, *Texas v. BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024). Mr. and Mrs. Henrichs are supporters of GOF. They and other GOF supporters like them have been, are being, and will continue to be irreparably harmed by Illinois' blatantly unconstitutional infringement of their Second and Fourteenth Amendment rights. *See* Exhibit C.

32. As Second Amendment advocacy organizations, protection of the rights and interests advanced in this litigation is germane to GOA and GOF's respective missions. Both GOA and GOF routinely litigate cases throughout the country on behalf of their members and supporters, and they are capable of fully and faithfully representing the interests of their members and supporters without individualized participation. The Second Amendment rights of their members and supporters have been and are currently being violated and infringed by virtue of these members and supporters' inability to apply for and receive licenses to carry concealed weapons in Illinois.

33. Defendant Brendan Kelly ("Director Kelly") is the Director of the Illinois State Police ("ISP"). Among his duties, Director Kelly is tasked by law with "the management and control of the Illinois State Police." 20 Ill. Comp. Stat. Ann. 2610/2. Mr. Kelly also is responsible for "mak[ing] and adopt[ing] rules and regulations for the direction, control, discipline and conduct of the members of the Illinois State Police and such other rules for the government and operation of the Illinois State Police as he may deem necessary." *Id*. As the individual who is responsible for determining which states are "substantially similar" for purposes of allowing out-of-state residents to apply for Illinois carry licenses (*see* 430 Ill. Comp. Stat. Ann. 66/40), Director Kelly is responsible for implementation of the Illinois nonresident license application statute. Likewise, Director Kelly is responsible for, and has implemented, Title 20, Part 1231 of the Illinois Administrative Code regarding "Firearm Concealed Carry Act Procedures."[4] Director Kelly may be served at 801 South 7th Street, Springfield, IL 62703.

34. Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, Raoul is responsible for enforcing Illinois State law, *see* 15 Ill. Comp. Stat. Ann. 205/4 (requiring that the Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which includes Illinois' ban on the concealed carry of firearms by those who do not live in Illinois or "substantially similar" states and thus are not eligible to apply for or receive a license to carry a concealed handgun.

---

[4] *See* https://www.ilga.gov/agencies/JCAR/EntirePart?titlepart=02001231; *see also* Ill. Admin. Code tit. 20, § 1231.110.

35. Defendants arrest and prosecute nonresidents who carry a concealed firearm without a license in violation of Illinois law.[5]

## II. JURISDICTION AND VENUE

36. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1651, 2201, 2202 and 42 U.S.C. §§ 1983 and 1988.

37. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III. STATEMENT OF FACTS

### a. The Second Amendment.

38. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

39. The Second Amendment presumptively protects "all Americans," *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008), applies to the states by operation of the Fourteenth Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), and protects "the general right to publicly carry arms for self-defense...." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 31 (2022).

40. Being law-abiding American citizens, Plaintiffs undoubtedly are part of "the people" protected by the Second Amendment whose proposed course of conduct – engaging in the public "bearing" of "arms" in Illinois – is presumptively protected by the Second Amendment.

---

[5] *See* https://www.wglt.org/illinois/2024-08-21/man-stopped-at-rnc-with-gun-is-arrested-near-dnc-in-chicago-with-glock-ammo (Wisconsin man arrested for carrying firearm without Illinois license, but who had a Wisconsin permit); https://southernillinoisnow.com/2021/07/08/what-we-know-about-the-iowa-man-arrested-after-firearms-found-in-chicago-hotel-room/ (Iowa man arrested in Chicago for having firearms without a "Firearms Owners Identification Card" but who had an Iowa permit).

11

41. Because Illinois law operates to entirely deprive Plaintiffs, and indeed the vast majority of Americans, of their Second Amendment right to bear arms, this Court's intervention is necessary to make it clear to the State of Illinois that it is not free to thumb its nose at the text of the Second Amendment, or the pronouncements of the Supreme Court.

### b. Illinois' Firearm Licensing Regime.

42. Illinois law requires an individual to be licensed in order to possess or carry a firearm. *See* 430 Ill. Comp. Stat. Ann. 66/1 (the "Firearm Concealed Carry Act"); 430 Ill. Comp. Stat. Ann. 65/0.01 (the "Firearm Owners Identification Card Act").

43. As part of this scheme, Illinois laws states that "[n]o person may acquire or possess any firearm … within this State without having in his or her possession a Firearm Owner's Identification Card...." 430 Ill. Comp. Stat. Ann. 65/2(a)(1).

44. Illinois law criminalizes the carrying of a concealed weapon without a license, which is a Class A misdemeanor. 720 Ill. Comp. Stat. Ann. 5/24-1(a)(4), (b).

45. The Illinois State Police is the entity in Illinois that issues licenses to carry concealed firearms. 430 Ill. Comp. Stat. Ann. 66/10.

46. The Illinois State Police "shall issue a license to carry a concealed firearm" (430 Ill. Comp. Stat. Ann. 66/10(a)) to an individual who "(1) is at least 21 years of age; (2) has a currently valid Firearm Owner's Identification Card … (3) has not been convicted or found guilty of" a misdemeanor domestic violence charge or "2 or more violations" of driving under the influence "within the 5 years preceding the date of the" application; "(4) is not the subject of a pending arrest warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm; (5) has not been in residential or court-ordered treatment for alcoholism … or drug treatment within the 5 years" preceding the application; and

12

"(6) has completed firearms training … required under Section 75 of this Act." 430 Ill. Comp. Stat. Ann. 66/25.

47. The Illinois State Police "shall issue or deny the applicant a license" "no later than 90 days after receipt of a completed application...." 430 Ill. Comp. Stat. Ann. 66/10(e).

48. Nonresidents, however, are exempt from the requirement of having a Firearm Owner's Identification Card and the "Illinois residency requirement…." 430 Ill. Comp. Stat. Ann. 66/40(c).

49. Even so, Illinois law requires that the Illinois State Police, and by extension, Director Kelly, "shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act." 430 Ill. Comp. Stat. Ann. 66/40(b).

50. Director Kelly, as Director of the Illinois State Police, implements and enforces Ill. Admin. Code tit. 20, § 1231.110, "Non-Resident Application," which purports to implement Illinois' statute on applications for licenses to carry a concealed handgun for those who are not residents of Illinois.

51. Specifically, Ill. Admin. Code tit. 20, § 1231.110(a) states that, "[p]ursuant to Section 40(b) of the Act, non-resident [concealed carry] applications will only be accepted from persons licensed or permitted to carry firearms, concealed or otherwise, in public, in a substantially similar state."

52. Ill. Admin. Code tit. 20, § 1231.110(c) further states that "[t]he Department shall determine which states are substantially similar, as defined in Section 1231.10, to Illinois in their manner of regulating concealed carry of firearms by surveying all other states," and (b) provides

13

that "[t]he Department shall post on its website a list of all states determined to be substantially similar."

53. "Substantially similar" is defined in Ill. Admin. Code tit. 20, § 1231.10 to mean "the comparable state regulates who may carry firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed or otherwise, in public through NLETs."

54. As of the date of filing this Complaint, there are only six states that Director Kelly has determined to be "substantially similar" to Illinois. These states are Arkansas, Idaho, Mississippi, Nevada, Texas, and Virginia.[6]

55. Illinois' firearm licensing scheme represents an extreme outlier among the states, first by conditioning the carry of a firearm on issuance of a government license or permit; second by refusing to allow a majority of nonresidents to apply for a license to carry a concealed handgun;[7] and, third, by not accepting or recognizing the licenses issued by any other state (virtually all states recognize at least some licenses issued by other states). In contrast, at least 29 states do not even require a license or permit to carry a concealed firearm in public at all, while the vast majority that do require licensing issue licenses to nonresidents, and most states that require a license for concealed carry still allow open carry without a license.

56. Because Plaintiffs are members of "the people" who wish to "keep and bear" protected "Arms" in public, *Bruen* requires that Illinois demonstrate that a broad and enduring

---

[6] *See* https://www.ispfsb.com/Public/SubstantiallySimilarSurvey.pdf.
[7] http://tinyurl.com/28axkx44.

historical tradition existed, at the time of the Founding, completely disarming citizens who merely happened to be residents of another state.

57. No such tradition has ever existed, and thus the challenged statute and regulations infringe rights that "shall not be infringed" and must be struck down.

## COUNT I
## U.S. CONST. AMENDS. II & XIV
## RIGHT TO KEEP AND BEAR ARMS
## 42 U.S.C. § 1983 AGAINST DEFENDANTS

58. The foregoing allegations are repeated and realleged as if fully set forth herein.

59. Illinois' refusal to allow nonresidents to keep and bear arms violates Plaintiffs' Second Amendment rights that "shall not be infringed," which applies to Illinois through operation of the Fourteenth Amendment.

60. Plaintiffs are or represent members of "the people" who desire to "bear" a quintessentially protected "Arm" (a handgun) in public.

61. Because the plain text of the Second Amendment covers Plaintiffs' conduct, the Second Amendment presumptively protects that conduct. Thus, the burden shifts to the government to demonstrate that its regulation is consistent with this Nation's historical tradition of regulating firearms.

62. Here, the burden is on Defendants to prove, based on Founding-era historical tradition, that their refusal to permit a vast majority of Americans to keep or bear arms in Illinois somehow comports with the original public understanding of the Second Amendment.

63. However, there is no historical analogue for requiring individuals to apply for a license to carry a concealed handgun prior to carrying a firearm in public (much less even possessing or "keep[ing]" a firearm), and there is certainly no historical analogue for limiting carry solely to those residents of only a few states.

64. Thus, 430 Ill. Comp. Stat. Ann. 66/40(b)'s "substantially similar" requirement, along with any regulations purporting to implement that requirement, including Ill. Admin. Code tit. 20, §§ 1231.10 and 1231.110, violate the Second and Fourteenth Amendments and conflict with *Bruen*'s clear teachings.

65. As such, Defendants' laws, customs, practices, and policies, reducing the Second Amendment's protection of the right to "keep and bear arms" to an inkblot, damage Plaintiffs in violation of 42 U.S.C. § 1983.

66. By infringing the Second Amendment right to bear arms in public in these ways, Illinois' laws and regulations discussed in the foregoing allegations violate the Second Amendment, which applies to Defendants by operation of the Fourteenth Amendment, both facially and as applied to Plaintiffs, and are therefore invalid.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. An order declaring that the challenged sections of 430 Ill. Comp. Stat. Ann. 66/40, Ill. Admin. Code tit. 20, §§ 1231.10 and 1231.110, and any other regulation, law, or policy that precludes the issuance of licenses to carry concealed handguns to nonresidents of states that are not considered "substantially similar" to Illinois' are unenforceable, unconstitutional, and violate the Second and Fourteenth Amendments to the United States Constitution;

2. An order declaring that Illinois must permit nonresidents to apply for and be issued licenses to carry a concealed handgun in Illinois;

3. An order permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from refusing to accept

applications from, and refusing to issue licenses to carry a concealed handgun to, otherwise eligible persons who are nonresidents of Illinois;

      4.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

      5.      Such other further relief as is necessary to effectuate the Court's judgment or that the Court otherwise deems just and appropriate.

Dated: March 13, 2026.

Respectfully submitted,

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
601-852-3440
stephen@sdslaw.us