**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

RACHEL HENRICHS et al.,

     Plaintiffs,

v.

BRENDAN KELLY, in his Official Capacity
as Director of the Illinois State Police, and
KWAME RAOUL, in his Official Capacity
as Attorney General of Illinois,

     Defendants.

No. 3:26-cv-00284-NJR

Honorable Nancy J. Rosenstengel

**<u>ANSWER</u>**

Defendants answer the complaint as follows:

1. This case involves a challenge to the State of Illinois' refusal to allow the vast majority of Americans to exercise their enumerated constitutional right to "keep and bear arms."

**Answer:** Defendants deny the allegations in paragraph 1.

2. Illinois law prohibits both the open and concealed public carry of firearms as a general matter, allowing only concealed carry upon licensure under the Firearm Concealed Carry Act. See 720 Ill. Comp. Stat. Ann. 5/24-1(a)(4) (generally prohibiting concealed and vehicular carry, but exempting licensees); 720 Ill. Comp. Stat. Ann. 5/24-1.6(a)(1) (extending the general prohibition to open carry, but without exempting licensees); 430 Ill. Comp. Stat. Ann. 66/10(c)("permit[ting] the licensee" to carry "fully concealed or partially concealed" and "concealed … within a vehicle").

**Answer:** Defendants admit that section 24-1(a) of the Criminal Code of 2012 provides:

"A person commits the offense of unlawful possession of weapons when he knowingly: . . .

(4) Carries or possesses in any vehicle or concealed on or about his person except when on his

land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal

dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun

gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect

transportation of weapons that meet one of the following conditions: . . . (iv) are carried or

1

possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act . . . ." 720 ILCS 5/24-1(a). Defendants further admit that section 24-1.6(a) of the Criminal Code of 2012 provides: "A person commits the offense of aggravated unlawful possession of a weapon when he or she knowingly: (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or (2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and (3) One of the following factors is present: . . . (A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act; or . . . (B-5) the pistol, revolver, or handgun possessed was uncased, unloaded, and the ammunition for the weapon was immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act . . . ." 720 ILCS 5/24-1.6(a). Defendants further admit that section 10(c) of the Firearm Concealed Carry Act provides: "A license [to carry a concealed firearm under the Firearm Concealed Carry Act] shall permit the licensee to: (1) carry a loaded or

unloaded concealed firearm, fully concealed or partially concealed, on or about his or her person; and (2) keep or carry a loaded or unloaded concealed firearm on or about his or her person within a vehicle." 430 ILCS 66/10(c). Defendants deny the remaining allegations in paragraph 2.

3.      Further, the State of Illinois does not recognize any other state's license to carry. Accordingly, Illinois nonresidents must obtain an Illinois license to legally carry a firearm in public while visiting the State.

**Answer:** Defendants admit the allegation that "Illinois nonresidents must obtain an Illinois license to legally carry a firearm in public while visiting the State." Defendants deny the remaining allegations in paragraph 3.

4.      However, in order for an Illinois nonresident to obtain a license to carry a concealed firearm in Illinois, 430 Ill. Comp. Stat. Ann. 66/40 states, in part, that "[t]he Illinois State Police shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are *substantially similar* to the requirements to obtain a license under this Act." *Id.* (emphasis added); *see also* Ill. Admin. Code tit. 20, § 1231.110.

**Answer:** Defendants admit that section 40(b) of the Firearm Concealed Carry Act provides: "The Illinois State Police shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act." 430 ILCS 66/40(b). Defendants deny the remaining allegations in paragraph 4.

5.      However, the laws of only six other states have been found to be "substantially similar" to Illinois' – namely, Arkansas, Idaho, Mississippi, Nevada, Texas, and Virginia. [FN1]

[FN1]  *See* https://www.ispfsb.com/Public/SubstantiallySimilarSurvey.pdf.

**Answer:** Defendants admit the allegations in paragraph 5 and footnote 1.

6.      Section 66/40 and the Illinois State Police implementation thereof violate the Second Amendment. The U.S. Supreme Court has explained that the Second Amendment right is exercised individually and belongs to all Americans, and guarantees a right to bear arms in public for self-defense.

**Answer:** Defendants deny the allegations in paragraph 6.

7.      In direct contravention of those clear holdings, Defendants provide no avenue for "all Americans," who are not residents of Illinois or who do not live in the six "substantially similar" states, to keep or bear arms.

**Answer:** Defendants deny the allegations in paragraph 7.

8.      And, because Illinois (i) generally bans the bearing of arms without a license to carry a concealed handgun, (ii) does not grant reciprocity to any other state's license to carry, and (iii) prohibits the open carrying of a firearm, [FN2] there is no way for Illinois nonresidents to "bear arms" in public.

[FN2] *See* 720 Ill. Comp. Stat. Ann. 5/24-1(a)(10).

**Answer:** Defendants deny the allegations in paragraph 8 and footnote 2.

9.      Thus, for the vast majority (approximately 81 percent) of Americans who are not residents of Illinois and who do not reside in one of the six "substantially similar" states, the Second Amendment right to bear arms simply does not exist. No other provision of the Bill of Rights works this way.

**Answer:** Defendants deny the allegations in paragraph 9.

10.      Illinois' patently unconstitutional scheme represents an extreme outlier among the 50 states, as Plaintiffs are not aware of *any state* except Hawaii that similarly has *no mechanism* for the majority of Americans to bear arms – by denying nonresidents the ability to apply for licenses to carry a concealed handgun, and by refusing to recognize or grant reciprocity to the out-of-state licenses held by nonresidents.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as

plaintiffs' awareness of other states' laws. Defendants deny the remaining allegations in

paragraph 10.

11.      Other courts recently have struck down similar firearm regimes. Rejecting California's refusal to issue nonresident licenses, a district court in California held that a law that barred nonresidents from applying for a license to carry a concealed handgun violated the Constitution. A New York district court did the same. Finally, a Massachusetts state court held that a person should not become a felon while traveling through a state simply because that person did not obtain that state's license to carry a concealed handgun.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 11.

4

12.      This Court similarly should reach the same conclusion here – that Illinois' complete ban on public carry for the majority of Americans violates the Second and Fourteenth Amendments.

**Answer:** Defendants deny the allegations in paragraph 12.

## I.      PARTIES

13.      Plaintiff Rachel Henrichs is a natural person and a citizen of the United States and of the State of Tennessee. Mrs. Henrichs resides in Claiborne County, Tennessee. *See* Exhibit A, Declaration of Rachel Henrichs.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 13.

14.      Mrs. Henrichs is a law-abiding person, a gun owner, a member of Plaintiff Gun Owners of America, Inc. ("GOA"), and she currently possesses a valid Tennessee Lifetime Enhanced Handgun Carry Permit. She is able to lawfully bear arms in public in Tennessee and across most of the country, either through other states' grants of reciprocity to her Tennessee permit or through the exercise of "constitutional carry" permitted by most states.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 14.

15.      Mrs. Henrichs served in the United States Marine Corps ("USMC") from 2004-2009, and received an honorable discharge. As an Officer in the USMC, she received firearm training involving both pistols and rifles, and she was deployed to Iraq with these firearms. After discharge, Mrs. Henrichs became a full-time operating room nurse. During this time, she also served in the Marine Corps Reserves and the United States Navy Nurse Corps. Since 2020, Mrs. Henrichs has received over 100 hours of firearms training and is a Certified NRA Pistol Instructor. Mrs. Henrichs also assists others with the training of students at a training academy.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 15.

16.      Plaintiff Reid Henrichs is a natural person and a citizen of the United States and of the State of Tennessee. Mr. Henrichs resides in Claiborne County, Tennessee. *See* Exhibit B, Declaration of Reid Henrichs.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 16.

17.     Like his wife and co-Plaintiff, Rachel Henrichs, Mr. Henrichs is a law-abiding person, a gun owner, a member of Plaintiff GOA, and he currently possesses a Tennessee Lifetime Enhanced Handgun Carry Permit, and permits to carry from Louisiana and New Jersey. He is able to lawfully bear arms in public in Tennessee and across most of the country, either through other states' grants of reciprocity to his Tennessee permit or through the exercise of "constitutional carry" permitted by most states.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     Mr. Henrichs also served in the USMC from 1999-2003 and received an honorable discharge. While serving, he became a Designated Marksman instructor. After discharge, Mr. Henrichs attended the Police Training Institute at the University of Illinois. Thereafter, he was a police officer from 2004-2006, during which time he was deployed with Task Force Illinois in response to Hurricanes Katrina and Rita. Mr. Henrichs is an NRA Certified Instructor, a Tennessee State Certified Handgun Safety Instructor, [FN3] and a certified handgun instructor with the Maryland State Police, the Illinois State Police, a "duly authorized" handgun instructor in New York State, certified to teach Connecticut handgun permit applicants, certified to teach handgun permit applicants in Rhode Island, and authorized to certify handgun applicants in New Jersey. He has been a full-time firearms instructor since 2013. Additionally, he holds a number of instructor ratings from firearms schools across the nation. Mr. Henrichs has owned and operated a firearms training facility called Valor Ridge (www.valorridge.com) since 2015. Mr. Henrichs has trained thousands of students from across the United States, including military, law enforcement, and responsible armed citizens.

[FN3]  *See* Tenn. Comp. R. & Regs. 1340-02-03-.06. This certification allows Mr. Henrichs to provide instruction so that persons can obtain a Tennessee Enhanced Handgun Carry Permit, thereby allowing those individuals to carry in a variety of additional areas in Tennessee, including, *inter alia*, "while within or on a public park, natural area, historic park, nature trail, campground, forest, greenway, waterway, or other similar public place that is owned or operated by the state, a county, a municipality, or instrumentality of the state, a county, or municipality[.]" *See* Tenn. Code Ann. § 39-17-1311(b)(1)(H)(i).

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and footnote 3.

19.     If allowed to apply for Illinois licenses to carry a concealed handgun, Mr. and Mrs. Henrichs would do so immediately. However, they are prohibited even from applying because they are not residents of Illinois and do not reside in one of the "substantially similar" states recognized by the Illinois State Police. Were Mr. and Mrs. Henrichs permitted to apply for an Illinois license to carry a concealed handgun, both would meet the eligibility standards required for such a license to carry a concealed handgun, aside from their nonresidency in Illinois. But for the Illinois prohibition on their applying by virtue of their out-of-state residency, both Mr. and Mrs. Henrichs are otherwise eligible to possess and carry firearms in Illinois.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.     Alternatively, if allowed to use their Tennessee permits to possess and carry firearms within Illinois, Mr. and Mrs. Henrichs would do so, but cannot due to operation of Illinois law, which does not recognize the validity of or grant reciprocity to any other state's permit.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     Mr. and Mrs. Henrichs are the type of persons discussed by the Supreme Court in its recent opinion in *N.Y. State Rifle & Pistol Ass'n v. Bruen* – that is, they are the typical, law-abiding American citizens with ordinary self-defense needs, who cannot be dispossessed of their right to bear arms in public for self-defense in Illinois simply due to their status as Tennessee residents.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that "Mr. and Mrs. Henrichs are the type of persons discussed by the Supreme Court in its recent opinion in *N.Y. State Rifle & Pistol Ass'n v. Bruen*." Defendants deny the remaining allegations in paragraph 21.

22.     A plaintiff need not submit to a government policy to establish standing to challenge that policy when formal application would be a futile gesture.

**Answer:** Defendants deny the allegations in paragraph 22.

23.     But even though she is not required to attempt to apply for a license to carry a concealed handgun and be refused before filing suit against the challenged statute, Mrs. Henrichs nevertheless did attempt to apply for an Illinois license to carry a concealed handgun on the Illinois State Police website. However, the website would not allow Mrs. Henrichs to apply once she selected that she resides in Tennessee.

**Answer:** Defendants admit that the Illinois State Police website at which a person may apply for a license to carry a concealed handgun does not allow applications from self-identified Tennessee residents. Defendants deny the allegation that Mrs. Henrichs "is not required to attempt to apply for a license to carry a concealed handgun and be refused before filing suit

against the challenged statute." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23.

24.    Additionally, after Mrs. Henrichs attempted, but was not allowed to apply for a license to carry a concealed handgun, she emailed ISP.AskFOIDandCCL@Illinois.gov and requested assistance in applying as a Tennessee resident.

**Answer:** Defendants admit that Mrs. Henrichs wrote the following email to ISP.AskFOIDandCCL@Illinois.gov: "I recently created a profile on the State of Illinois Firearms Services website under this email address. After creating the profile and verifying my email address and telephone number; I went back to the website to begin the application process. On the first landing page I selected my state of residence as Tennessee, but was unable to select the box that allowed me to begin the application process for a Concealed Carry License (CCL). I was curious if there was a glitch in the system, as when I tried it with Texas as the state of residence (as it was right below Tennessee in the drop down menu) it would allow me to check this box. Thank you for any assistance you can provide. I look forward to hearing from you." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24.

25.    The Illinois State Police then sent Mrs. Henrichs a response, stating that "Residents of Tennessee are not eligible for a non-resident IL CCL. For more information, please visit the www.ispfsb.com FAQ section. Thank you, ISP J746." *See* Exhibit A.

**Answer:** Defendants admit the allegations in paragraph 25.

26.    Both Mr. and Mrs. Henrichs are ready and able to apply for a license to carry a concealed handgun in Illinois, meeting all the requirements of Illinois law, except for residency in Illinois or in one of the "substantially similar" states identified by the State Police. Mr. and Mrs. Henrichs would apply immediately if the residency requirement was struck down.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

8

27.     Due to operation of Illinois law and Illinois' refusal to allow American citizens from most other states to even apply for an Illinois license, there is no avenue for Mr. and Mrs. Henrichs to apply for and to receive a license to carry a concealed handgun in the State of Illinois.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that "there is no avenue for Mr. and Mrs. Henrichs to apply for and to receive a license to carry a concealed handgun in the State of Illinois." Defendants deny the remaining allegations in paragraph 27.

28.     Mr. and Mrs. Henrichs routinely visit their friends in Marion, Illinois. In the next 60 days and regularly thereafter, Mr. and Mrs. Henrichs intend to visit Marion, Illinois to visit those friends and, but for the challenged statute, Mr. and Mrs. Henrichs would carry their handguns concealed during their stay in Marion. However, because they are prohibited from carrying their handguns concealed, as they cannot even apply for an Illinois concealed carry license, Mr. and Mrs. Henrichs will be required to choose between leaving their handguns locked in their vehicle while they visit friends in Illinois, or violating state law. *See* 430 Ill. Comp. Stat. Ann. 66/40(e). A violation of Illinois' "Unlawful Possession of Weapons," 720 Ill. Comp. Stat. Ann. 5/24-1, is a Class A misdemeanor, with a "sentence of imprisonment … of less than one year" and a fine between $75 to $2,500. *See* 730 Ill. Comp. Stat. Ann. 5/5-4.5-55. Both Mr. and Mrs. Henrichs are ready to otherwise comply with all other Illinois laws regarding possession and carry while in Illinois.

**Answer:** Defendants admit that section 40(e) of the Firearm Concealed Carry Act provides: "Nothing in this Act shall prohibit a non-resident from transporting a concealed firearm within his or her vehicle in Illinois, if the concealed firearm remains within his or her vehicle and the non-resident: (1) is not prohibited from owning or possessing a firearm under federal law; (2) is eligible to carry a firearm in public under the laws of his or her state or territory of residence, as evidenced by the possession of a concealed carry license or permit issued by his or her state of residence, if applicable; and (3) is not in possession of a license under this Act. If the non-resident leaves his or her vehicle unattended, he or she shall store the firearm within a locked vehicle or locked container within the vehicle in accordance with subsection (b) of Section 65 of this Act." 430 ILCS 66/40(e). Defendants further admit that a person convicted of a

9

single violation of section 24-1(a)(4) of the Criminal Code of 2012 commits a Class A

misdemeanor. Defendants further admit that the sentence of imprisonment for a Class A

misdemeanor may be a determinate sentence of less than one year and that a fine of at least $75

and up to and including $2,500 may be imposed for each Class A misdemeanor offense.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 28.

29.    Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including thousands within Illinois and many in this District. Many of GOA's members, like Mr. and Mrs. Henrichs, are law-abiding citizens of the United States but are not residents of Illinois or "substantially similar" states, and therefore cannot apply for and receive a license to carry a handgun in Illinois. Consequently, GOA members and supporters like Mr. and Mrs. Henrichs have been, are being, and will continue to be irreparably harmed by Illinois' blatantly unconstitutional contravention of their Second and Fourteenth Amendment rights. *See* Exhibit C, Declaration of Erich M. Pratt.

**Answer:** Defendants deny the allegation that "GOA members and supporters like Mr. and

Mrs. Henrichs have been, are being, and will continue to be irreparably harmed by Illinois'

blatantly unconstitutional contravention of their Second and Fourteenth Amendment rights."

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 29.

30.    GOA's Senior Vice President, Mr. Pratt, further identifies six GOA members who do not reside within Illinois and who do not reside in one of the six "substantially similar" states. For instance, Carl Higbie, a GOA member and resident of Connecticut, travels to Illinois and wishes to obtain an Illinois license to carry but cannot even apply for one. *See* Exhibit C at ¶ 10. Richard Hughes, a GOA member and resident of Florida, also wishes to obtain an Illinois license to carry, but cannot apply. *Id.* at ¶ 11. Sheryl Decasse, a GOA member and resident of New Jersey, likewise wishes to obtain a license to carry in Illinois, but cannot apply. *Id.* at ¶ 12. Micah Young, a GOA member and resident of Michigan, also wishes to obtain a license to carry in Illinois but is prohibited from applying. *Id.* at ¶ 13. And Andrew Roberts, a GOA member and resident of Hawaii, is prohibited from applying for an Illinois license to carry because he does not live in Illinois or in one of the other "substantially similar" states. *Id.* at ¶ 14. Finally, Val

10

Finnell, a GOA member who resides in Pennsylvania, occasionally travels to Illinois and also wishes to apply for an Illinois license to carry, but is prohibited from applying because he does not live in Illinois and Pennsylvania is not a "substantially similar" state. *Id.* at ¶ 15.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 30.

31.     Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. For example, two of GOF's Board Members also are supporters of GOF. Although not a "traditional" membership organization, courts have found GOF to possess "indicia of membership" under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), for purposes of representing its supporters' interests in litigation. *See, e.g.*, *Texas v. BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024). Mr. and Mrs. Henrichs are supporters of GOF. They and other GOF supporters like them have been, are being, and will continue to be irreparably harmed by Illinois' blatantly unconstitutional infringement of their Second and Fourteenth Amendment rights. *See* Exhibit C.

**Answer:** Defendants deny the allegation that Mr. and Mrs. Henrichs "and other GOF

supporters like them have been, are being, and will continue to be irreparably harmed by Illinois'

blatantly unconstitutional infringement of their Second and Fourteenth Amendment rights."

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 31.

32.     As Second Amendment advocacy organizations, protection of the rights and interests advanced in this litigation is germane to GOA and GOF's respective missions. Both GOA and GOF routinely litigate cases throughout the country on behalf of their members and supporters, and they are capable of fully and faithfully representing the interests of their members and supporters without individualized participation. The Second Amendment rights of their members and supporters have been and are currently being violated and infringed by virtue of these members and supporters' inability to apply for and receive licenses to carry concealed weapons in Illinois.

**Answer:** Defendants deny the allegations in paragraph 32.

33.     Defendant Brendan Kelly ("Director Kelly") is the Director of the Illinois State Police ("ISP"). Among his duties, Director Kelly is tasked by law with "the management and

control of the Illinois State Police." 20 Ill. Comp. Stat. Ann. 2610/2. Mr. Kelly also is responsible for "mak[ing] and adopt[ing] rules and regulations for the direction, control, discipline and conduct of the members of the Illinois State Police and such other rules for the government and operation of the Illinois State Police as he may deem necessary." *Id.* As the individual who is responsible for determining which states are "substantially similar" for purposes of allowing out-of-state residents to apply for Illinois carry licenses (see 430 Ill. Comp. Stat. Ann. 66/40), Director Kelly is responsible for implementation of the Illinois nonresident license application statute. Likewise, Director Kelly is responsible for, and has implemented, Title 20, Part 1231 of the Illinois Administrative Code regarding "Firearm Concealed Carry Act Procedures." [FN4] Director Kelly may be served at 801 South 7th Street, Springfield, IL 62703.

[FN4]  *See* https://www.ilga.gov/agencies/JCAR/EntirePart?titlepart=02001231; *see also* Ill. Admin. Code tit. 20, § 1231.110.

**Answer:** Defendants admit the allegation that Brendan Kelly is the Director of the Illinois State Police. Defendants further admit that section 2 of the Illinois State Police Act provides: "The Director shall be responsible for the management and control of the Illinois State Police. The Director shall make and adopt rules and regulations for the direction, control, discipline and conduct of the members of the Illinois State Police and such other rules for the government and operation of the Illinois State Police as he may deem necessary." 20 ILCS 2610/2. Defendants further admit that section 40(b) of the Firearm Concealed Carry Act provides: "The Illinois State Police shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act." 430 ILCS 66/40(b). Defendants further admit that Brendan Kelly, in his official capacity as Director of the Illinois State Police, enforces section 1231.110 of title 20 of the Illinois Administrative Code, which is the rule implementing section 40(b) of the Firearm Concealed Carry Act. Defendants further admit the allegation that "Director Kelly may be served at 801 South 7th Street, Springfield, IL 62703." Defendants deny the remaining allegations in paragraph 33 and footnote 4.

34.     Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, Raoul is responsible for enforcing Illinois State law, *see* 15 Ill. Comp. Stat. Ann. 205/4 (requiring that the Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which includes Illinois' ban on the concealed carry of firearms by those who do not live in Illinois or "substantially similar" states and thus are not eligible to apply for or receive a license to carry a concealed handgun.

**Answer:** Defendants deny the allegation that the Attorney General's responsibilities under the second provision of section 4 of the Attorney General Act, 15 ILCS 205/4 (second), "include[ ]" enforcing "Illinois' ban on the concealed carry of firearms by those who do not live in Illinois or 'substantially similar' states and thus are not eligible to apply for or receive a license to carry a concealed handgun." Defendants admit the remaining allegations in paragraph 34.

35.     Defendants arrest and prosecute nonresidents who carry a concealed firearm without a license in violation of Illinois law. [FN5]

[FN5]  *See* https://www.wglt.org/illinois/2024-08-21/man-stopped-at-rnc-with-gun-is-arrested-near-dnc-in-chicago-with-glock-ammo (Wisconsin man arrested for carrying firearm without Illinois license, but who had a Wisconsin permit); https://southernillinoisnow.com/2021/07/08/what-we-know-about-the-iowa-man-arrested-after-firearms-found-in-chicago-hotel-room/ (Iowa man arrested in Chicago for having firearms without a "Firearms Owners Identification Card" but who had an Iowa permit).

**Answer:** Defendants deny the allegations in paragraph 35.

## II.     JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1651, 2201, 2202 and 42 U.S.C. §§ 1983 and 1988.

**Answer:** Defendants admit that the Court has jurisdiction of this action under 28 U.S.C. § 1331 because it arises under the constitution and laws of the United States. Defendants deny the remaining allegations in paragraph 36.

37.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**Answer:** Defendants admit the allegations in paragraph 37.

## III.    STATEMENT OF FACTS

### a. The Second Amendment.

38.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

**Answer:** Defendants admit the allegations in paragraph 38.

39.    The Second Amendment presumptively protects "all Americans," *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008), applies to the states by operation of the Fourteenth Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), and protects "the general right to publicly carry arms for self-defense...." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 31 (2022).

**Answer:** Defendants admit that *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008), provides: "We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." Defendants further admit that *McDonald v. Chicago*, 561 U.S. 742, 750, 791 (2010), "hold[s] that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*" and therefore "the Second Amendment right is fully applicable to the States." Defendants further admit that *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 31 (2022), provides: "Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense that we discuss in detail below." Defendants deny the remaining allegations in paragraph 39.

40.    Being law-abiding American citizens, Plaintiffs undoubtedly are part of "the people" protected by the Second Amendment whose proposed course of conduct – engaging in the public "bearing" of "arms" in Illinois – is presumptively protected by the Second Amendment.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

14

41.     Because Illinois law operates to entirely deprive Plaintiffs, and indeed the vast majority of Americans, of their Second Amendment right to bear arms, this Court's intervention is necessary to make it clear to the State of Illinois that it is not free to thumb its nose at the text of the Second Amendment, or the pronouncements of the Supreme Court.

**Answer:** Defendants deny the allegations in paragraph 41.

### b. Illinois' Firearm Licensing Regime.

42.     Illinois law requires an individual to be licensed in order to possess or carry a firearm. *See* 430 Ill. Comp. Stat. Ann. 66/1 (the "Firearm Concealed Carry Act"); 430 Ill. Comp. Stat. Ann. 65/0.01 (the "Firearm Owners Identification Card Act").

**Answer:** Defendants admit the allegation that Illinois law generally "requires an individual to be licensed in order to possess or carry a firearm," subject to various exceptions specifically set forth in Illinois law. Defendants deny the remaining allegations in paragraph 42.

43.     As part of this scheme, Illinois laws states that "[n]o person may acquire or possess any firearm … within this State without having in his or her possession a Firearm Owner's Identification Card...." 430 Ill. Comp. Stat. Ann. 65/2(a)(1).

**Answer:** Defendants admit that section 2(a)(1) of the Firearm Owners Identification Card Act provides: "No person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Illinois State Police under the provisions of this Act." 430 ILCS 65/2(a)(1). Defendants deny the remaining allegations in paragraph 43.

44.     Illinois law criminalizes the carrying of a concealed weapon without a license, which is a Class A misdemeanor. 720 Ill. Comp. Stat. Ann. 5/24-1(a)(4), (b).

**Answer:** Defendants admit that section 24-1(a) of the Criminal Code of 2012 provides: "A person commits the offense of unlawful possession of weapons when he knowingly: . . . (4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun

15

gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions: (i) are broken down in a non-functioning state; or (ii) are not immediately accessible; or (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card; or (iv) are carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act . . . ." 720 ILCS 5/24-1(a). Defendants admit that section 24-1(b) of the Criminal Code of 2012 provides: "A person convicted of a violation of subsection 24-1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(11), subsection 24-1(a)(13), or 24-1(a)(15) commits a Class A misdemeanor. . . . A person convicted of a second or subsequent violation of subsection 24-1(a)(4), 24-1(a)(8), 24-1(a)(9), 24-1(a)(10), or 24-1(a)(15) commits a Class 3 felony. . . . The possession of each weapon or device in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1(b). Defendants deny the remaining allegations in paragraph 44.

45.    The Illinois State Police is the entity in Illinois that issues licenses to carry concealed firearms. 430 Ill. Comp. Stat. Ann. 66/10.

**Answer:** Defendants admit the allegations in paragraph 45.

46.    The Illinois State Police "shall issue a license to carry a concealed firearm" (430 Ill. Comp. Stat. Ann. 66/10(a)) to an individual who "(1) is at least 21 years of age; (2) has a currently valid Firearm Owner's Identification Card … (3) has not been convicted or found guilty of" a misdemeanor domestic violence charge or "2 or more violations" of driving under the influence "within the 5 years preceding the date of the" application; "(4) is not the subject of a pending arrest warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm; (5) has not been in residential or court-ordered treatment for alcoholism … or drug treatment within the 5 years" preceding the application; and "(6) has completed firearms training … required under Section 75 of this Act." 430 Ill. Comp. Stat. Ann. 66/25.

**Answer:** Defendants admit that section 10(a) of the Firearm Concealed Carry Act provides: "The Illinois State Police shall issue a license to carry a concealed firearm under this Act to an applicant who: (1) meets the qualifications of Section 25 of this Act; (2) has provided the application and documentation required in Section 30 of this Act; (3) has submitted the requisite fees; and (4) does not pose a danger to himself, herself, or others, or a threat to public safety as determined by the Concealed Carry Licensing Review Board in accordance with Section 20." 430 ILCS 66/10(a). Defendants further admit that section 25 of the Firearm Concealed Carry Act provides: "The Illinois State Police shall issue a license to an applicant completing an application in accordance with Section 30 of this Act if the person: (1) is at least 21 years of age; (2) has a currently valid Firearm Owner's Identification Card and at the time of application meets the requirements for the issuance of a Firearm Owner's Identification Card and is not prohibited under the Firearm Owners Identification Card Act or federal law from possessing or receiving a firearm; (3) has not been convicted or found guilty in this State or in any other state of: (A) a misdemeanor involving the use or threat of physical force or violence to any person within the 5 years preceding the date of the license application; or (B) 2 or more violations related to driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or any combination thereof, within the 5 years preceding the date of the license application; (4) is not the subject of a pending arrest warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm; (5) has not been in residential or court-ordered treatment for alcoholism, alcohol detoxification, or drug treatment within the 5 years immediately preceding the date of the license application; and (6) has completed firearms training and any education component required

17

under Section 75 of this Act." 430 ILCS 66/25. Defendants deny the remaining allegations in paragraph 46.

47.     The Illinois State Police "shall issue or deny the applicant a license" "no later than 90 days after receipt of a completed application...." 430 Ill. Comp. Stat. Ann. 66/10(e).

**Answer:** Defendants admit that section 10(e) of the Firearm Concealed Carry Act provides: "An application for a license submitted to the Illinois State Police that contains all the information and materials required by this Act, including the requisite fee, shall be deemed completed. Except as otherwise provided in this Act, no later than 90 days after receipt of a completed application, the Illinois State Police shall issue or deny the applicant a license." 430 ILCS 66/10(e). Defendants deny the remaining allegations in paragraph 47.

48.     Nonresidents, however, are exempt from the requirement of having a Firearm Owner's Identification Card and the "Illinois residency requirement…." 430 Ill. Comp. Stat. Ann. 66/40(c).

**Answer:** Defendants admit that section 40(c) of the Firearm Concealed Carry Act provides: "A resident of a state or territory approved by the Illinois State Police under subsection (b) of this Section may apply for a non-resident license. The applicant shall apply to the Illinois State Police and must meet all of the qualifications established in Section 25 of this Act, except for the Illinois residency requirement in item (xiv) of paragraph (2) of subsection (a) of Section 4 of the Firearm Owners Identification Card Act." 430 ILCS 66/40(c). Defendants deny the remaining allegations in paragraph 48.

49.     Even so, Illinois law requires that the Illinois State Police, and by extension, Director Kelly, "shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act." 430 Ill. Comp. Stat. Ann. 66/40(b).

**Answer:** Defendants admit that section 40(b) of the Firearm Concealed Carry Act provides: "The Illinois State Police shall by rule allow for non-resident license applications from

18

any state or territory of the United States with laws related to firearm ownership, possession, and

carrying, that are substantially similar to the requirements to obtain a license under this Act." 430

ILCS 66/40(b). Defendants deny the remaining allegations in paragraph 49.

50.     Director Kelly, as Director of the Illinois State Police, implements and enforces Ill. Admin. Code tit. 20, § 1231.110, "Non-Resident Application," which purports to implement Illinois' statute on applications for licenses to carry a concealed handgun for those who are not residents of Illinois.

**Answer:** Defendants admit that Brendan Kelly, in his official capacity as Director of the

Illinois State Police, enforces section 1231.110 of title 20 of the Illinois Administrative Code,

which is the rule implementing section 40(b) of the Firearm Concealed Carry Act. Defendants

deny the remaining allegations in paragraph 50.

51.     Specifically, Ill. Admin. Code tit. 20, § 1231.110(a) states that, "[p]ursuant to Section 40(b) of the Act, non-resident [concealed carry] applications will only be accepted from persons licensed or permitted to carry firearms, concealed or otherwise, in public, in a substantially similar state."

**Answer:** Defendants admit that section 1231.110(a) of title 20 of the Illinois

Administrative Code provides: "Pursuant to Section 40(b) of the [Firearm Concealed Carry] Act,

non-resident [Firearms Concealed Carry License] applications will only be accepted from

persons licensed or permitted to carry firearms, concealed or otherwise, in public, in a

substantially similar state." 20 Ill. Admin. Code 1231.110(a). Defendants deny the remaining

allegations in paragraph 51.

52.     Ill. Admin. Code tit. 20, § 1231.110(c) further states that "[t]he Department shall determine which states are substantially similar, as defined in Section 1231.10, to Illinois in their manner of regulating concealed carry of firearms by surveying all other states," and (b) provides that "[t]he Department shall post on its website a list of all states determined to be substantially similar."

**Answer:** Defendants admit that section 1231.110(c) of title 20 of the Illinois

Administrative Code provides: "The [Illinois State Police] shall determine which states are

substantially similar, as defined in Section 1231.10, to Illinois in their manner of regulating concealed carry of firearms by surveying all other states." 20 Ill. Admin. Code 1231.110(c). Defendants further admit that section 1231.110(b) of title 20 of the Illinois Administrative Code provides: "The [Illinois State Police] shall post on its website a list of all states determined to be substantially similar." 20 Ill. Admin. Code 1231.110(b). Defendants deny the remaining allegations in paragraph 52.

53. "Substantially similar" is defined in Ill. Admin. Code tit. 20, § 1231.10 to mean "the comparable state regulates who may carry firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed or otherwise, in public through NLETs."

**Answer:** Defendants admit that section 1231.10 of title 20 of the Illinois Administrative Code provides: "'Substantially Similar' means the comparable state regulates who may carry firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to [the National Instant Criminal Background Check System maintained by the Federal Bureau of Investigation]; and participates in reporting persons authorized to carry firearms, concealed or otherwise, in public through [the National Law Enforcement Telecommunications System]." 20 Ill. Admin. Code 1231.10. Defendants deny the remaining allegations in paragraph 53.

54. As of the date of filing this Complaint, there are only six states that Director Kelly has determined to be "substantially similar" to Illinois. These states are Arkansas, Idaho, Mississippi, Nevada, Texas, and Virginia. [FN6]

[FN6] *See* https://www.ispfsb.com/Public/SubstantiallySimilarSurvey.pdf.

**Answer:** Defendants admit the allegations in paragraph 54 and footnote 6.

55.     Illinois' firearm licensing scheme represents an extreme outlier among the states, first by conditioning the carry of a firearm on issuance of a government license or permit; second by refusing to allow a majority of nonresidents to apply for a license to carry a concealed handgun; [FN7] and, third, by not accepting or recognizing the licenses issued by any other state (virtually all states recognize at least some licenses issued by other states). In contrast, at least 29 states do not even require a license or permit to carry a concealed firearm in public at all, while the vast majority that do require licensing issue licenses to nonresidents, and most states that require a license for concealed carry still allow open carry without a license.

[FN7]  http://tinyurl.com/28axkx44.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 and footnote 7.

56.     Because Plaintiffs are members of "the people" who wish to "keep and bear" protected "Arms" in public, *Bruen* requires that Illinois demonstrate that a broad and enduring historical tradition existed, at the time of the Founding, completely disarming citizens who merely happened to be residents of another state.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the allegation that "Plaintiffs are members of 'the people' who wish to 'keep and bear' protected 'Arms' in public." Defendants deny the remaining allegations in paragraph 56.

57.     No such tradition has ever existed, and thus the challenged statute and regulations infringe rights that "shall not be infringed" and must be struck down.

**Answer:** Defendants deny the allegations in paragraph 57.

**COUNT I**
**U.S. CONST. AMENDS. II & XIV**
**RIGHT TO KEEP AND BEAR ARMS**
**42 U.S.C. § 1983 AGAINST DEFENDANTS**

58.     The foregoing allegations are repeated and realleged as if fully set forth herein.

**Answer:** The foregoing answers are repeated as if fully set forth herein.

59.     Illinois' refusal to allow nonresidents to keep and bear arms violates Plaintiffs' Second Amendment rights that "shall not be infringed," which applies to Illinois through operation of the Fourteenth Amendment.

**Answer:** Defendants deny the allegations in paragraph 59.

60.     Plaintiffs are or represent members of "the people" who desire to "bear" a quintessentially protected "Arm" (a handgun) in public.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60.

61.     Because the plain text of the Second Amendment covers Plaintiffs' conduct, the Second Amendment presumptively protects that conduct. Thus, the burden shifts to the government to demonstrate that its regulation is consistent with this Nation's historical tradition of regulating firearms.

**Answer:** Defendants deny the allegations in paragraph 61.

62.     Here, the burden is on Defendants to prove, based on Founding-era historical tradition, that their refusal to permit a vast majority of Americans to keep or bear arms in Illinois somehow comports with the original public understanding of the Second Amendment.

**Answer:** Defendants deny the allegations in paragraph 62.

63.     However, there is no historical analogue for requiring individuals to apply for a license to carry a concealed handgun prior to carrying a firearm in public (much less even possessing or "keep[ing]" a firearm), and there is certainly no historical analogue for limiting carry solely to those residents of only a few states.

**Answer:** Defendants deny the allegations in paragraph 63.

64.     Thus, 430 Ill. Comp. Stat. Ann. 66/40(b)'s "substantially similar" requirement, along with any regulations purporting to implement that requirement, including Ill. Admin. Code tit. 20, §§ 1231.10 and 1231.110, violate the Second and Fourteenth Amendments and conflict with *Bruen*'s clear teachings.

**Answer:** Defendants deny the allegations in paragraph 64.

65.     As such, Defendants' laws, customs, practices, and policies, reducing the Second Amendment's protection of the right to "keep and bear arms" to an inkblot, damage Plaintiffs in violation of 42 U.S.C. § 1983.

**Answer:** Defendants deny the allegations in paragraph 65.

66.     By infringing the Second Amendment right to bear arms in public in these ways, Illinois' laws and regulations discussed in the foregoing allegations violate the Second Amendment, which applies to Defendants by operation of the Fourteenth Amendment, both facially and as applied to Plaintiffs, and are therefore invalid.

**Answer:** Defendants deny the allegations in paragraph 66.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.    An order declaring that the challenged sections of 430 Ill. Comp. Stat. Ann. 66/40, Ill. Admin. Code tit. 20, §§ 1231.10 and 1231.110, and any other regulation, law, or policy that precludes the issuance of licenses to carry concealed handguns to nonresidents of states that are not considered "substantially similar" to Illinois' are unenforceable, unconstitutional, and violate the Second and Fourteenth Amendments to the United States Constitution;

2.    An order declaring that Illinois must permit nonresidents to apply for and be issued licenses to carry a concealed handgun in Illinois;

3.    An order permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from refusing to accept applications from, and refusing to issue licenses to carry a concealed handgun to, otherwise eligible persons who are nonresidents of Illinois;

4.    Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

5.    Such other further relief as is necessary to effectuate the Court's judgment or that the Court otherwise deems just and appropriate.

**Answer:** Defendants deny that plaintiffs are entitled to any relief.

## AFFIRMATIVE DEFENSE

Plaintiffs' claim against Kwame Raoul, sued in his official capacity as Attorney General of Illinois, is barred by the Eleventh Amendment and principles of sovereign immunity. The exception set forth in *Ex Parte Young*, 209 U.S. 123 (1908), does not apply because plaintiffs have not identified any authority that the Attorney General possesses to enforce any relevant provision of Illinois law. Nor have plaintiffs shown that the Attorney General is threatening to enforce any of those provisions against them.

Dated: April 13, 2026

Respectfully submitted,

/s/ Darren Kinkead
Darren Kinkead
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
(773) 590-6967
Darren.Kinkead@ilag.gov